UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STACY T. WOODS | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) No. 13 C 8953 |
| v. | ) |
| | ) Magistrate Judge Susan E. Cox |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|       **Defendant.** | ) |

## ORDER

Plaintiff's motion for summary judgment is granted [dkt. 12]. We remand to re-examine the Commissioner's decision using the factors set forth in Social Security Act, 42 U.S.C. section 405(g). Defendant's motion for summary judgment is denied [dkt. 22].

## STATEMENT

Plaintiff Stacy T. Woods ("plaintiff") filed for social security disability benefits after he fell and hit his head in a bathtub causing traumatic brain injury.[1] Plaintiff testified that he has two to four headaches per day, lasting from two to eight hours per headache.[2] Plaintiff worked for over five years as a materials handler at a chemical distribution company.[3] His responsibilities involved operating a forklift and physically lifting and carrying loads weighing up to seventy pounds.[4] Plaintiff was laid off on March 2, 2010, due to his employer's concerns that his frequent headaches made him a potential danger to himself and others when driving a forklift.[5]

---

[1] R. 547.
[2] R. 65.
[3] R. at 62.
[4] *Id.*
[5] R. at 21.

1

Plaintiff's doctors variously described his headaches as vascular, cervicogenic, cluster, and tension.[6] The headaches vary in number, intensity, and duration, and occur both during the day and at night.[7] Plaintiff keeps a headache diary showing that the headaches have gotten worse over time.[8] Plaintiff spends most of each day lying down to mitigate the effects of his headaches.[9] His headaches usually cause visual disturbances, blurry vision, photophobia, phonophobia, throbbing, dizziness, and lightheadedness.[10] During the day he tries to move around, if he is able, but he is virtually inactive twenty-four hours a day.[11]

Young Lee, M.D., plaintiff's primary care physician, attempted to treat his headaches, but was unsuccessful.[12] From March 2010 to June 2010, plaintiff sought treatment at the Vista Medical Center East.[13] Plaintiff was treated there several times for headaches, migraines, neck pain, and cervical radiculopathy, and received outpatient therapy.[14] From March 2010 until May 2011, plaintiff also sought treatment with Shaku Chhabria, M.D., a board certified neurologist.[15] For more than a year, Dr. Chhabria treated plaintiff for a combination of vascular and migraine headaches with a cervicogenic component, but was unable to manage his symptoms.[16] Dr. Chhabria indicated that plaintiff's headaches were so severe he was unable to tolerate work or

---

[6] R. at 23,24, 544,561,599.
[7] R. at 65.
[8] R. at 66.
[9] *Id.*
[10] R. at 76; 565,596
[11] R. at 66, 71.
[12] R. at 323
[13] R. at 327-366.
[14] *Id.*
[15] R. at 537-584.
[16] R. at 545.

perform household chores.[17]

Plaintiff then sought treatment at the Diamond Headache Clinic, where he saw Alex Feoktistov, M.D., a board certified neurologist who specializes in treating severe headaches.[18] After several unsuccessful treatments, Dr. Feoktistov reported that plaintiff's headaches would preclude him from performing even basic work activities.[19] According to Dr. Feoktistov, plaintiff's headaches would require him to take as many as four unscheduled breaks lasting a minimum of 45 minutes during an eight-hour working day.[20] As of July 13, 2012, Dr. Feoktistov reported that Plaintiff was still suffering from at least four severe headaches per day, and that his prescribed treatment was unsuccessful.[21]

Daniel Dadabo, Administrative Law Judge ("ALJ") found that the plaintiff had a severe impairment of cluster headaches.[22] The ALJ also determined that the plaintiff was not disabled and could perform sedentary work.[23] The ALJ did not find plaintiff's testimony at the hearing to be credible regarding intensity, persistence and limiting effects of his symptoms.[24] The ALJ also determined that the opinions of the plaintiff's two treating neurologists – Dr. Chhabria and Dr. Feoktistov – would be given little weight because they relied on inconsistent, subjective reports by the plaintiff.[25] We must sustain the ALJ's finding if it is supported by substantial evidence and is free of legal

---

[17] R. at 616.
[18] R. at 600.
[19] R. at 613.
[20] *Id.*
[21] R. at 637.
[22] R. at 21.
[23] R. at 22.
[24] *Id.*
[25] R. at 26.

error.[26] Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.[27]

## DISCUSSION

### I. THE ALJ IMPROPERLY DISREGARDED PLAINTIFF'S TESTIMONY AND OTHER CIRCUMSTANTIAL EVIDENCE ON THE RECORD.

Plaintiff's credibility is crucial to showing that his headaches are responsible for his inability to work, and "a claimant's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence."[28] Additionally, the ALJ "may not ignore circumstantial evidence, medical or lay, which does support claimant's credibility."[29]

Here, the ALJ reviewed the record and concluded that, "it is apparent that headache symptoms were not consistent from one source to the next and that 'daily to intermittently' would imply a vague frequency that known medical etiologies would not explain, implying that the claimant was not able to provide accurate and specific details concerning his impairments, and that they reasonably would not be expected to cause symptoms of the intensity, frequency and restriction that he asserts."[30] However, the ALJ cannot simply disregard the plaintiff's subjective complaints simply because they were not substantiated by the objective medical evidence. This is especially true where, as here, the claimant's condition does not lend itself to diagnosis using objective medical testing. As the neutral medical examiner ("ME"), Ronald Semerdjian, M.D., testified at the

---

[26] 42. U.S.C. 405 §(g).
[27] *McKinzey v. Astrue,* 641 F.3d 884, 889 (7th Cir. 2011) (citing *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009)).
[28] 20 C.F.R. §404.1529(c); SSR 96-7p.
[29] *Lopez v. Barnhart,* 336 F.3d 535, 539-40 (7th Cir. 2003).
[30] R. 25.

4

plaintiff's hearing, doctors "don't usually find abnormalities" in the objective evidence to explain cluster headaches.[31] As such, the ALJ committed legal error by disregarding the plaintiff's subjective statements about the persistence and intensity of his symptoms.

Moreover, the ALJ ignored a large swath of circumstantial evidence on the record that would credibly support the plaintiff's subjective complaints. The record shows that plaintiff's life has substantially changed since his accident. Prior to his head trauma, and subsequent headaches, the plaintiff had a full-time job as a forklift operator,[32] and reported that he had been working since he was fifteen years old.[33] After he began suffering from headaches: 1) he lost his job because his employer did not believe he could safely operate a forklift given the frequency of plaintiff's headaches;[34] 2) he moved in with his sister at her apartment, and she takes care of most of his daily chores, such as laundry and grocery shopping because plaintiff's headaches render him incapable to do so;[35] 3) he spends most of the day lying down to mitigate the effects of his headaches;[36] 4) he keeps a headache diary to keep track of the length, frequency, and severity of his headaches;[37] and 5) he has sought treatment and changed doctors when the various treatments did not work, but he has still not found a treatment that has brought substantial relief.[38] These facts all support the plaintiff's claims that his headaches are so severe that they prevent him from working, even at a sedentary job. By ignoring this circumstantial evidence, the ALJ committed legal error, and we must remand for further

---

[31] R. at 42.
[32] R. at 62.
[33] R. at 75.
[34] R. at 73-74.
[35] R. at 70, 74.
[36] R. at 74.
[37] R. at 66.
[38] *See generally*, R. at 311-420.

proceedings consistent with this opinion.

## II. THE ALJ IMPROPERLY DISREGARDED THE PLAINTIFF'S TREATING PHYSICIANS' OPINIONS.

Next, plaintiff argues that the ALJ violated SSR 96-2p when he determined that the plaintiff's treating physicians' conclusions would be given very little weight because "the doctors' opinions are based solely on the claimant's subjective reports, which have not remained consistent throughout the record and which varied by provider."[39] A treating source is entitled to controlling weight if the opinion is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) not inconsistent with other substantial evidence.[40] The Seventh Circuit accords great deference to the opinions of treating physicians because of their greater familiarity with the claimant's conditions and circumstances.[41]

Although the severity and duration of the headaches that plaintiff reported to his doctors varied, both of plaintiff's treating physicians stated that the plaintiff's headaches, which occurred at least daily and would often debilitate plaintiff for up the eight hours, would make it extremely difficult for plaintiff to consistently attend work. Dr. Chhabria noted that plaintiff "would miss work more than four days per month, and that he was unable to tolerate even low stress work based on his report."[42] Dr. Feoktistov opined that plaintiff "could tolerate moderate stress, but that he would require frequent work breaks and would likely be absent from work more than four

---

[39] R. at 26.
[40] 20 C.F.R. s.404.1527(d)(1-5); SSRs 96-2p; 96-8p.
[41] *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003).
[42] R. 26.

6

times per month due to his headaches."[43] Margaret Ford, the vocational expert who testified at plaintiff's hearing, stated that the type of sedentary jobs appropriate for someone with plaintiff's background (*e.g.*, sorter, bench hand, and table worker) would only allow an employee to miss approximately one day of work per month, and would not allow recurring, unscheduled breaks.[44] These conclusions are entirely consistent with the medical record in this case, which shows that plaintiff's headaches occurred daily following his accident (and often several times a day), and would often require him to lie down for several hours a day to alleviate his symptoms. Nonetheless, the ALJ's opinion gave minimal weight to the treating physicians' opinions, stating that they were "not correlated by any recent abnormal signs, findings or test results."[45]

Instead, the ALJ relied heavily on the opinion of the ME. However, the ME's testimony was consistent with the opinions of the plaintiff's treating physicians. For example, the ME claimed that cluster headaches like those the plaintiff suffers from would limit plaintiff in the area of concentration, and would cause blurry vision,[46] which is identical to the treating physicians' reports.[47] The ME also stated that if the plaintiff's self-reported medical history were accurate, his headaches would be present "all day almost," which the ALJ noted is "obviously inconsistent with any work that I could identify in the regional economy."[48] Again, this is consistent with the treating physicians' conclusions that plaintiff's headaches would require him to take frequent, irregular breaks, and cause him to miss four days of work per month.

---

[43] *Id.*
[44] R. at 84.
[45] R. at 26.
[46] R. at 48.
[47] *See, e.g.,* R. at 565 ("The patient complains of blurry vision with double vision. . . . During the headaches, he has difficulty concentrating and he is irritable").
[48] R. at 51-52.

7

Additionally, the ALJ's statement that the treating physicians' opinions are not entitled to deference because they were based on the plaintiff's subjective reports is also inconsistent with the ME's testimony. The ME noted that cluster headaches are "not a disease where there are objective findings that we can use to guide us . . . [s]o we don't have objective data to guide us in a thing like this, it's based on the history of the frequency of the headaches and the severity of the headaches."[49] In other words, the ME testified that, without specific tests to point to, headache treatment would necessarily rely upon a patient's "subjective report" to his doctor. Therefore, the ALJ's decision to give the treating physicians' opinions little weight because they "are based solely on the claimant's subjective reports" represents a misunderstanding of the clinical treatment of plaintiff's condition, and an error of law.

We find it disturbing that the ALJ in this case decided to ignore the recommendations of two treating neurologists, who had treated the plaintiff on several occasions and specialize in headache treatment, even though there is "substantial evidence" throughout the record which supports their findings and treatments. This is especially improper where the testimony of both the VE and the ME was largely consistent with the treating physicians' conclusions that plaintiff's headaches would prevent him from consistently performing even sedentary work. Doing so was legal error, and the ALJ's decision is reversed.

## **CONCLUSION**

For the foregoing reasons, we remand this matter for further proceedings consistent with this opinion. Plaintiff's motion for summary judgment is granted [dkt.

---

[49] R. 47.

12] and the Commissioner's motion for summary judgment is hereby denied [dkt. 22].


DATED:  4/27/2015                                   /s/ Susan E. Cox
                                                    Susan E. Cox
                                                    United States Magistrate Judge